# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## CIVIL CASE NO. 3:06cv73

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ANGRY ALES, INC., ROBERT ) <br> JOHN ALFIERI and DEREK ) <br> STEVEN PAGE, ) <br> ) <br> Defendants. ) <br> ) | **MEMORANDUM OF DECISION <br> AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's motion for summary judgment. The Defendants, who are represented by counsel, have failed to respond.

## PROCEDURAL HISTORY

On February 21, 2006, the Plaintiff initiated this action seeking damages against the Defendants for violations of 47 U.S.C. §§553 & 605, unauthorized interception or receipt and unauthorized publication and use

1

of communications.  Specifically, the Defendants are alleged to have used an illegal satellite receiver or cable converter device to intercept the Plaintiff's broadcast of a boxing match which the individual Defendants then broadcast in their bar, Defendant Angry Ales, on February 22, 2003.  The Plaintiff seeks statutory damages.

The Defendants appeared by answer through counsel on May 12, 2006.  In the answer, the Defendants admitted that on the occasion in question, they operated "a neighborhood bar and grille known as 'Angry Ales' at 1518 Montford Drive, Charlotte, N.C. 28209." **Answer, filed may 12, 2006, at ¶5.**  The Defendants also admitted that the individual Defendants are the shareholders, officers and directors of Defendant Angry Ales.  *Id.*, at ¶6.  As defenses, the Defendants raised boilerplate defenses and the general allegation that they did not wrongfully intercept the satellite signal owned by the Plaintiff.  *Id.*, at 3-4.  Defendants did, however, admit that they have no contractual relationship with the Plaintiff.  *Id.*  And, the Defendants did not deny that they broadcast the boxing match at issue.  *Id.*

A pre-trial order and case management plan was entered on December 29, 2006.  In accordance with the deadlines contained therein,

the Plaintiff moved for summary judgment on June 21, 2007.  The Defendants have failed to respond although represented by counsel.

## STANDARD OF REVIEW

> Under the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

**Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (emphasis in original).**

"Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." **Id. at 522, citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).**  If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist.  **Id.**

> A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial."  Furthermore, neither "[u]nsupported

3

speculation," nor evidence that is "merely colorable" or "not significantly probative," will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then, regardless of "[a]ny proof or evidentiary requirements imposed by the substantive law," "summary judgment, if appropriate, shall be entered."

*Id.*

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported ... defenses[.]" **Celotex Corp, 477 U.S. at 323-24.** And, a party may not rely on "the mere pleadings themselves[.]" *Id.*; ***Baber v. Hosp. Corp. Of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992).** "Summary judgment is not solely a defensive mechanism: Rule 56 expressly contemplates the availability of summary judgment to a claimant. That a movant bears the ultimate burden of proof or persuasion ... is no obstacle to a summary judgment award in favor of that party, so long as the requirements of Rule 56 are otherwise satisfied." ***Bouchat*, 346 F.3d at 521-22.**

Nonetheless, in considering the facts for the purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. ***Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).**

4

**DISCUSSION**

In support of the motion for summary judgment, Joseph Gagliardi, the President of the Plaintiff, provided an affidavit in which he explained that Joe Hand Promotions, Inc. (Promotions) is a closed-circuit distributor of sports and entertainment programming. **Gagliardi Affidavit, filed June 21, 2007, at ¶3.** Promotions purchased and retains the commercial exhibition licensing rights to the *Tyson v. Etienne* boxing match which was broadcast on February 22, 2003. *Id*. Promotions then sold the rights to air that program via sub-licencing agreements to its own customers in the entertainment industry, such as bars, restaurants and nightclubs. *Id*. At no time did Promotions sell any rights or enter into any sub-licensing agreement with Angry Ales or the individual Defendants.[1] *Id.*, **at ¶7.** Nor did any of the Defendants purchase such rights.[2] *Id*.

The Plaintiff has also provided the affidavits of two private investigators both of whom averred that on February 22, 2003, they entered the Defendant bar, Angry Ales, and watched a boxing match featuring Mike Tyson. **Affidavit of Ritchie A. McManus, dated February**

---

[1] In fact, the Defendants admitted this in their answer.

[2] Again, the Defendants admitted this in their answer.

27, 2003; Affidavit of Thomas M. Caune, dated March 3, 2003.**

McManus averred that he saw the live boxing match known as *"Tyson versus Etienne"* being broadcast on seven television sets located inside Angry Ales. **McManua Affidavit, *supra*.** Caune averred that he saw a different boxing match between Tyson and Nielson being broadcast on seven television sets located inside Angry Ales. **Caune Affidavit, *supra*.** This match was a rebroadcast of a fight which had earlier taken place in Denmark between Tyson and Nielson; thus, it was not the fight which is the subject matter of this motion. **Caune Affidavit, *supra*.** Caune also averred that he saw a pre-fight interview of Etienne "on video tape." *Id.* Caune averred that he did not see a cable box or a satellite dish. *Id.*

Gagliardi explained that "signal pirates" illegally intercept and broadcast Promotions programming by using (1) a "black box" which is installed on a cable television line which then allows for the de-scrambled reception of a pay-per-view broadcast; (2) a "smart card" which when installed on a DSS satellite receiver line allows for the de-scrambled reception of a pay-per-view broadcast; (3) an illegal cable drop from an apartment or home adjacent to the commercial establishment; and/or (4) the purchase of illegal unencryption devices and illegal satellite

6

authorization codes.  **Gagliardi Affidavit,** *supra.***, at ¶8.**  It is alleged that the Defendants here used an illegal satellite receiver which intercepted the Plaintiff's signal or used an illegal cable converter box to intercept the broadcast.

The Defendants have failed to respond to the motion to summary judgment.  As a result, the only pleading before the Court is their answer.  However, as noted above, "[t]hat a movant bears the ultimate burden of proof or persuasion ...  is no obstacle to a summary judgment award in favor of that party, so long as the requirements of Rule 56 are otherwise satisfied."  ***Bouchat, supra.***  While the Plaintiff in this action bears the ultimate burden of proof, the Defendants' complete failure to respond to the motion for summary judgment is not an obstacle to granting the motion because it is properly supported.  *Id.*

47 U.S.C. §553 provides a private cause of action for any entity damaged by the illegal interception or receipt of any communications service offered over a cable system.  **47 U.S.C. §553(a)(1) & (c).**  The Plaintiff alleged that the Defendants used an illegal satellite receiver which intercepted the Plaintiff's signal or used an illegal cable converter box to intercept the broadcast.  This would be a violation of §553.  ***Home Box***

*Office v. Gee-Co., Inc.*, 838 F.Supp. 436 (E.D.Mo. 1993). However, as noted below, the Plaintiff did not move for summary judgment as to §553. **Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment and Summary Adjudication, filed June 21, 2007 at 1, 3, 5.**

47 U.S.C. §605 provides a private cause of action stemming from the unauthorized publication or use of communications. **47 U.S.C. §605(a), (d)(6), (e)(3)(A).** "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person." **47 U.S.C. §605(a).** When the Defendants broadcast the *Tyson v. Etienne* fight on February 22, 2003, they violated §605. *Id.*; **Home Box Office, *supra*.**

> [Plaintiff] relies on two uncontroverted affidavits to support its allegation that [the Defendants] committed a violation of 47 U.S.C. §[] 605. [McManus'] affidavit states that, on [February 22, 2003,] he observed a broadcast of the [*Tyson v. Etienne*] Event over [seven] television monitors at [Angry Ales] in the presence of approximately [48] patrons. [Plaintiff] also attached the affidavit of [Gagliardi.] [Gagliardi's] affidavit establishes that [Plaintiff] had the exclusive, proprietary right to exhibit and sublicense exhibition of the Event to closed circuit locations ... and that [the Defendants] did not obtain authorization from [the Plaintiff] to display the Event. [The Plaintiff's] uncontroverted summary judgment evidence establishes that [the Defendants] violated 47 U.S.C. §[]605.

*Entertainment by J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F.Supp.2d 769, 775 (S.D.Tex. 2002) (granting summary judgment for the plaintiff where the defendants failed to respond to the motion); *accord*, *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F.Supp.2d 955, 957 (E.D.Wis. 2001) (granting summary judgment to plaintiff against defendant who failed to respond to the motion because the court "assume[d] that he does not dispute the truth of the facts or accuracy of the law presented by" the plaintiff).

Plaintiff has stated three claims in the complaint, two claims pursuant to §605 and one pursuant to §553. All three claims arise out of the same incident on February 22, 2003. Count I alleges that the Defendants used an illegal satellite receiver or illegal cable converter box to intercept the programing in violation of §605. **47 U.S.C. §605(a).** The evidence presented in support of the motion for summary judgment establishes this violation as to the boxing match between Tyson and Etienne. The allegation contained in Caune's affidavit that he saw "on video tape" a prefight interview with Etienne does not sufficiently establish a violation as the meaning of "on video tape" is unclear. The Court thus finds one violation of §605. ***Community Television Systems, Inc. v. Caruso***, 284

**F.3d 430, 435 (2nd Cir. 2002).**

Count II alleges that the Defendants modified a device for the purpose of such interception. The evidence does not establish or even refer to this violation. Although the Plaintiff does not appear to have moved for summary judgment as to Count II, the Court would in any event decline to grant summary judgment as to this claim.

Count III alleges the illegal reception and interception of cable communications in violation of §553. However, the Plaintiff's motion for summary judgment does not seek summary judgment as to §553 but is limited to §605.[3] The Court thus will not grant judgment as to the claim pursuant to §553.

The allegations of the complaint and the affidavits in support of the motion, together with the Defendants' admissions, show that the individual Defendants had the right and ability to supervise the violations and a strong financial interest in the activity which occurred on February 22,

---

[3]There is some debate as to whether a plaintiff may recover under both sections. It thus appears that the Plaintiff here has elected to pursue damages only pursuant to §605. **See, *i.e.*, *Joe Hand Promotions, Inc. v. Phillips,* 2007 WL 2030285 (S.D.N.Y. 2007), citing *Kingvision Pay-Per-View, Ltd. v. New Paradise Restaurant*, 2000 WL 378053 (S.D.N.Y. 2000).**

2003.  *J & J Sports Productions, Inc. v. Benson,* **2007 WL 951872 (E.D.N.Y. 2007).**  As a result, the individual Defendants are jointly and severally liable with the corporate Defendant.

The evidence presented in support of summary judgment is sufficient to establish that the conduct was willful.  Caune averred that he did not observe either a cable box nor satellite dish at Angry Ales.  "Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."  *Time Warner Cable of New York City v. Googies Luncheonette*, 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999).  "In order for [the Defendants] to receive the closed circuit broadcast, it had to have engaged in some deliberate act, such as using an unauthorized decoder or altering the cable service in some way, so as to receive and view the scrambled transmission."  *Time Warner Cable of New York v. Taco Rapido Restaurant*, 988 F.Supp. 107, 111 (E.D.N.Y. 1997).

The Plaintiff seeks only statutory damages up to $10,000 and an enhancement up to $100,000 because the violation was willful.  **47 U.S.C. §605(e)(3)(C)(i)(II) ("[T]he party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section ... in a sum of not less than $1,000 or more than $10,000, as the court**

**considers just.]"); §605(e)(3)(C)(ii) ("In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect ... private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation[.]").**

> Many courts have noted that awarding statutory damages under §605 is a discretionary exercise. [C]ourts have generally adopted one of two approaches to calculating statutory damages under §605. Where there is uncontroverted evidence of the number of patrons at the establishment, courts have often multiplied that number by a certain amount. ... The calculation attempts to approximate either the profit obtained by the defendants with respect to each patron or the license fees of which the plaintiff was deprived, presuming that each patron would otherwise have ordered the event for residential use. [S]ome courts have awarded the license fee the offender would have paid based on the establishment's capacity.
>
> The second approach awards a flat sum for each violation. Courts using this analysis take into account "repeated violations over an extended period of time, [] substantial unlawful monetary gains by the defendants, or conversely, [] any significant actual damages to the plaintiff."
>
> Here, the plaintiff has not submitted data showing the extent of the profits the defendants might have realized by illegally showing the fight. Nor has the plaintiff provided the fees that it charged residential customers who viewed the event. If damages were calculated using the license fee [although that data also was not provided] based on the defendants' small capacity as a [bar] the figure would be far below the $1,000.00 statutory minimum. ... Nevertheless, the availability of unauthorized access to programming reduces demand, and any damages award should be substantial enough to help deter future violations.

***Joe Hand Promotions, supra.*, at \*\*4-5 (citations omitted).**

The Court notes that the case cited involves the same Plaintiff. Thus, the Plaintiff is on notice that other courts have found that it failed to submit evidence in support of damages, as it has done here. There is no evidence of the cost of a license fee, profits lost by the Plaintiff, other fees not received as a result of the violation or that the violation occurred repeatedly. Nor did the Defendants charge a cover charge for entry into the bar on the night in question. **McManus Affidavit,** *supra.***; Caune Affidavit,** *supra.*

    The Court finds the appropriate award of damages is $1,000, the statutory minimum, enhanced by another $1,000 due to the wilfulness of the violation and the need to deter future violations. **See,** *e.g.***, *Kingvision Pay-Per-View Ltd. v. Lalaeo*, 429 F.Supp.2d 506, 514 (E.D.N.Y. 2006) (Court may award damages based on what it "considers just.");** *Directv, Inc. v. Agee*, 405 F.Supp.2d 6, 11 (D.D.C. 2005). The Plaintiff has also submitted a detailed affidavit in support of the statutory award of attorneys' fees. **47 U.S.C. §605(e)(3)(B)(iii);** *Community Television Systems, Inc., supra*. However, it appears that the amount sought of $3,160.00 is incorrect. Plaintiff's counsel avers that her hourly rate is

$200.00 and that she expended 12.8 hours in connection with the litigation; thus, the correct amount of attorneys' fees is $2,560.00. Counsel failed to support the request for costs with any detail and thus, costs will not be awarded.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's motion for summary judgment is hereby **GRANTED** as to Count I and Judgment shall issue simultaneously herewith.

**IT IS FURTHER ORDERED** that the Plaintiff's claims in Counts II and III of the complaint are hereby **DISMISSED**.

Signed: October 29, 2007

Martin Reidinger
United States District Judge